(No. 36074.—

THE PEOPLE *ex rel.* VIRGIL BALL, County Collector, Appellee, *vs.* CLAUDE W. ANDERSON *et al.,* Appellants.

*Opinion filed Jan. 12, 1961.—Rehearing denied March 27, 1961.*

ARTHUR D. YOUNG, of Lewistown, for appellants.

BLAINE RAMSEY, State's Attorney, of Lewistown, (LACHDAN CRISSEY, of counsel,) for appellee; and CHIPER-FIELD & CHIPERFIELD, of Canton, for intervenor.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is a proceeding on application of the county collector of Fulton County for judgment for delinquent taxes for the year 1958. Some 210 objectors had paid their taxes under protest, objecting to the validity of the 1958 quadrennial assessment. The objections were overruled and the court entered appropriate orders for the sale of certain of the lands and for disposition of the tax funds paid under protest. A post-trial motion for judgment was overruled. This appeal is from the above-stated orders of the county court.

Although there was some testimony offered and received, together with some exhibits, a stipulation of facts constitutes the bulk of the record in this case. This stipulation discloses that the various township assessors in Fulton County undertook the assessment of real property and on dates varying from May 12, 1958, to August 4, 1958, these township assessors completed their assessments and turned their township assessment books over to the supervisor of assessments.

The assessments as made by the township assessors as to the objectors were all increased by the supervisor of assessments.

The township assessment books were turned over by the supervisor of assessments to the board of review of the county, beginning on July 18, 1958, for the first township, and ending on September 15, 1958, for the last of the townships. Publication of all assessments was made by the supervisor of assessments, commencing on July 31, 1958, and ending with the last publication of assessments on October 2, 1958.

On May 6, 1958, the board of review of the county was organized and commenced upon its duties. The board stayed in session, hearing complaints and acting as a board of review until December 17, 1958. Some 23 of the objectors appeared as complainants before the board. The balance of the objectors did not request hearings or otherwise appear before the board. All objectors paid 100% of their real-estate taxes under protest prior to June 1, 1959.

On October 1, 1959, the county collector, after notice and publication, made application for judgment on delinquent taxes. The objections to the 1958 assessment were on file with the court. The assessment is sought to be declared void as depriving the taxpayers of their property without due process, since, it is contended, no opportunity was given for a hearing before a validly constituted board of review that was legally in session.

It is further contended that any publication of assessments after July 10, 1958, was not a valid publication, as is required by the appropriate statutory provisions, and, further, that the publication of assessments, even if otherwise valid, was late, being published after the deadline for filing complaints before the board of review.

The statutory plan for the assessment of real estate for taxing purposes in counties of the size of Fulton contemplates that the assessment shall be made in the first instance by the township assessor. Thereafter, the supervisor of assessments has the same authority as the township assessor to assess and to make changes or alterations in the assessment of the property as made by the township assessors. All changes and alteration in the assessment of real property, as, indeed, is the original assessment, are subject to revision by the board of review. The taxpayer's right to appear before the board of review and be heard as to the correctness of his assessment is after the assessment list is required by law to be published, in accordance with the provisions of section 103 of the Revenue Act of 1939. Ill. Rev. Stat. 1959, chap. 120, par. 584.

A review of the applicable statutory provisions indicates that in quadrennial assessment years the supervisor of assessments is required to publish a full and complete list of the assessments of the real and personal property by townships as soon as he has completed the assessment. In other years, the supervisor of assessments is required to publish the assessment of personal property in full and a list of real estate for which assessments have been added or changed since the last preceding assessment, together with the amounts of the assessments on such real estate. Such publication shall be made on or before July 10 of that year in counties with less than 150,000 inhabitants. The foregoing statutory provision, being essentially the language of section 103 of the Revenue Act of 1939, is the statutory provision which, in the view of the objectors,

requires publication of the quadrennial assessment on or before July 10 of the assessment year. It seems clear, however, from a reading of the language with reference to the requirement for publication, that in quadrennial years the supervisor of assessments is required to publish as soon as he has completed the assessment. As to other years, the assessment is required to be made on or before July 10.

It has been held that the foregoing section imposes a mandatory duty to make publication and that the appropriate official can be compelled to perform that duty by *mandamus,* although the statutory time for the performance thereof has passed. (*People ex rel. Rentschler* v. *Walsh,* 334 Ill. App. 519.) It has further been held, however, that there is no constitutional requirement for the publication of a tax assessment list and that the legislature has the power to waive the publication if it sees fit so to do. (*People* v. *Holmstrom,* 8 Ill.2d 401.) This last-cited case involved personal property assessment lists.

In the case of *Dietman* v. *Hunter,* 5 Ill.2d 486, we held that due process of law requires only that a property owner be given notice and opportunity to be heard upon the valuation of his property at some point in the taxing process before his liability to pay the tax becomes conclusively established. In this connection, we there stated: "The requirements of due process are satisfied by a law which affords an opportunity to be heard with respect to assessments before the board of review. 'But a law prescribing a time when complaints will be heard before the board of review is all the notice that is required. [Citation.] If the law secured to the defendant a hearing after the assessment was in fact made, of which he had notice by the statute, that would be sufficient.' (*Carney* v. *People,* 210 Ill. 434, 440; cf. *Hagar* v. *Reclamation District No. 108,* 111 U.S. 710; *People* v. *International Salt Co.* 233 Ill. 223; *People* v. *Shirk,* 252 Ill. 95.)"

Thus, it would appear that the duty to publish is a duty

that can be enforced by *mandamus,* but that publication and notice is not required in order to meet the requirements of due process, if, by some means, the taxpayer has sufficient notice and opportunity of a hearing. The provision for the publication of a tax assessment list found in section 103 of the Revenue Act of 1939, above discussed, is a means of affording taxpayers notice as to the amount of their assessments. The requirement there found as to quadrennial years contemplates the publication as soon as the taxing process has been completed, and the July 10 date obviously relates to years other than quadrennial assessment years, and the failure of the supervisor of assessments to publish the tax assessments prior to July 10 in the quadrennial assessment year can have no application as to the validity of the assessment.

Turning, next, to the consideration as to whether or not the board of review of Fulton County was legally in session, section 107 of the Revenue Act of 1939, (Ill. Rev. Stat. 1959, chap. 120, par. 588,) provides that the board of review in a county of the size of Fulton shall be finally adjourned on or before September 7, provided that in the years of quardrennial assessments, with the approval of the county board, the board may remain in session until not to exceed 30 days after the September 7 date. In the present case, the board of review was, of course, in session more than 30 days after the September date and the record demonstrates that the board of supervisors approved of the additional time in that the board adopted a resolution providing for the payment of the *per diem* compensation for the additional time. After the expiration of the 30-day period, the record indicates that additional extensions of time were obtained for additional time for the board of review from the Department of Revenue, presumably exercising the authority given it under sections 140 and 144 of the Revenue Act, (Ill. Rev. Stat. 1959, chap. 120, pars. 621 and 625). Further, in the case of *People ex rel. Lunn*

v. *Chicago Title and Trust Co.* 409 Ill. 505, and in the case of *Barkley* v. *Dale,* 213 Ill. 614, we have previously indicated that statutory provisions establishing specific adjournment dates for a board of review were to be considered directory only and that actions by the board of review subsequent to the statutory adjournment date would be treated as valid sessions of a legally constituted and functioning board of review and that the board could continue to operate under color of office and its acts would be considered valid, even though subsequent to the statutory adjournment date.

Thus, it appears in this proceeding that the quadrennial assessment publication was made as required by law; that the objectors had notice of the assessment and a reasonable opportunity to file objections before the board of review and obtain a hearing before a duly constituted body empowered to correct any defects in the tax assessment machinery.

It is finally contended by the objectors that a *prima facie* case was lacking in the county court in that the collector did not introduce in evidence the delinquent list, the published notice, nor the collector's affidavit, which are said to be necessary in order to make out a *prima facie* case. In this case, however, the parties, by stipulation, supplied all of the necessary facts for a *prima facie* case. (*People ex rel. Brenza* v. *Anderson,* 411 Ill. 252.) Aside from the fact that the stipulation supplies the *prima facie* case, it appears from record that this objection was first raised on this appeal and was not timely presented in the county court.

A careful review of the record in this case demonstrates to us that the orders of the county court of Fulton County were correct, and the orders of that court are affirmed.

*Orders affirmed.*