(No. 49091.

NEIL ANDREWS *et al.*, Appellees, v. CHARLES P. FOX-WORTHY, County Treasurer, Appellant.

*Opinion filed Jan. 27, 1978.—Rehearing denied March 30, 1978.*

15

UNDERWOOD and MORAN, JJ., dissenting.

Richard J. Doyle and Thomas J. Fahey, State's Attorneys, of Danville (Thomas E. Brannigan, Special Assistant State's Attorney, of Chicago, and Richard Kurth, Assistant State's Attorney, of counsel), for appellant.

Wilber & Youck, of Colfax (David A. Youck, of counsel), for appellees.

Dennis P. Ryan, State's Attorney, of Waukegan (William J. Blumthal, Assistant State's Attorney, of counsel), for *amicus curiae* Robert G. Jasper, County Supervisor of Assessments.

MR. JUSTICE RYAN delivered the opinion of the court:

Four hundred and eight taxpayers in Vermilion County filed a petition for a refund of part of their 1972 real estate taxes, alleging that part of the tax was invalid since the supervisor of assessments had failed to publish increases in assessments made in a nonquadrennial year by July 10, 1972, as required by section 103 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 584). The petition alleged that the taxes had been paid in full, and tax receipts stamped "Paid Under Protest" were attached to the petition. The trial judge allowed the plaintiffs to amend the petition to conform with the requirements of section 194 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 675), and the case proceeded as a hearing on tax objections. On stipulated facts, the trial court held that the failure to publish the assessment changes before July 10 in 1972, a nonquadrennial year, rendered the assessment increases void. The appellate court affirmed (43 Ill. App. 3d 438), with one justice dissenting, and we granted leave to appeal.

The primary issue in this court is whether the statutory publication date for increased assessments in a

nonquadrennial year is merely directory or is mandatory, such that tardy publication invalidates the increase. The relevant portion of section 103 of the Revenue Act, pertaining to counties of less than 2,000,000 in population, provides:

> "In years other than years of a quadrennial assessment of real property, the *** supervisor of assessments *** *shall publish* the assessment of personal property in full and a list of real estate for which assessments have been added or changed since the last preceding assessment, together with the amounts of the assessments on such real estate. *Such publication shall be made on or before July 10, of that year* in counties with less than 150,000 inhabitants ***, and shall be printed in some public newspaper or newspapers published in the county; or shall be mailed to every person in that township ***: Provided, that in every county containing less than 2,000,000 inhabitants, in addition to the publication of the list of assessments of real property ***, as provided above, a notice shall be mailed by the *** supervisor of assessments *** to each taxpayer at his address ***. In every township or assessment district in which there is published one or more newspapers of general circulation, the list of such township shall be published in one of the newspapers." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 120, par. 584.

The facts in this cause were stipulated in the trial court. The supervisor of assessments in Vermilion County increased certain real property assessments in 1972, a nonquadrennial year pursuant to section 46 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 527). He failed to publish the increases in a newspaper by July 10, 1972, but did publish in proper form on or before October 28, 1972. In addition, after July 10, 1972, but sometime prior to publication, the supervisor of assessments also mailed a notice to the taxpayers advising them that their assessments had been increased and that they had 10 days from the date of publication in the newspaper to file a written complaint with the board of review. The parties also stipulated that the board of review had lawfully

remained in session until January 6, 1973. The trial court concluded that the defendant's failure to comply with the statutory publication date rendered the assessment increases void. Defendant filed a motion to reconsider and attempted to introduce new evidence that 31 of the plaintiffs had, in fact, filed complaints with the board of review. The trial court denied admission of the new evidence and the motion to reconsider, but did allow two petitions to intervene by school districts.

The appellate court affirmed the trial court's refund order and, relying on *People v. Jennings* (1954), 3 Ill. 2d 125, held that the statutory publication requirements must be strictly followed. *Jennings* involved a total failure to publish assessments of personal property as required by statute. In that case, this court held the tax void, noting that the publication requirement was mandatory in view of its nature and purpose.

The defendant attempts to distinguish *Jennings* on the grounds that *Jennings* involved a complete failure to publish personal property assessments, while the instant case only deals with a late publication of real property assessment increases. Defendant argues that since the taxpayers here had actual mailed notice in addition to publication, even though both were late, *Jennings* is inapplicable. Defendant's principal contention appears to be that the statutory publication date is directory, not mandatory, and that failure to strictly comply with the specified date does not invalidate the increases.

Relatively few cases have considered the violation of publication requirements under section 103. After examining these cases and considering the nature of the statute, we cannot agree with the defendant that *Jennings* is distinguishable from the case at bar, nor do we agree that the date of publication is merely directory. While the factual situation in *Jennings* is not identical to the case at bar, the rationale of that decision is nonetheless applicable

to the present case. Furthermore, an examination of the language and purpose of the publication provision clearly denotes its mandatory character. As a mandatory statute, strict compliance is required. We note at this time that the taxpayers do not allege a violation of due process; they contend that the defendant has violated the duty imposed on him by statute. Hence, those cases involving questions of notice and hearing pursuant to due process requirements will only be considered peripherally.

In *People v. Jennings* (1954), 3 Ill. 2d 125, the State sued the defendant to recover personal property taxes for 1951. However, the list of personal property assessments for 1951 had not been published pursuant to section 103 of the Revenue Act. In *Jennings* this court quoted from *French v. Edwards* (1872), 80 U.S. (13 Wall.) 506, 511, 20 L. Ed. 702, 703, which sets forth the general rule governing whether the provisions of a statute are to be mandatory or directory, as follows:

" 'There are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but

mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise.' " 3 Ill. 2d 125, 127.

In *Jennings* the court also quoted from *Lyon v. Alley* (1889), 130 U.S. 177, 185, 32 L. Ed. 899, 902, 9 S. Ct. 480, 483, as follows:

" 'The provisions of statutes as to the form and mode of assessments, as to tax lists, and the place where the tax lists are to be deposited, are, according to the highest authority, designed for the benefit of the taxpayers and the protection of their property from sacrifice.' " 3 Ill. 2d 125, 127-28.

In *Jennings,* in holding that the provisions of section 103 were mandatory, this court stated:

"Publication of the assessment roll is clearly not designed for the guidance of officers or the maintenance of order, system and dispatch in proceedings. Its purpose, like that of provisions concerning notice, is to afford the taxpayer information and an opportunity to ascertain whether the assessment is excessive or disproportionate. In view of its nature, therefore, the requirement is *prima facie* mandatory rather than directory, and failure to comply will vitiate the tax unless a contrary legislative intent is otherwise manifested." 3 Ill. 2d 125, 128.

It should be noted that the publication requirements considered in *Jennings* are contained not only in the same section of the statute with which we are concerned in this case, but also in the same sentence of that section.

We believe that an analysis of the distinction between mandatory and directory statutes (particularly those prescribing conduct of public officials), together with a close

examination of the language, nature and purpose of section 103, considered in light of the above authority, clearly indicates that the publication date is mandatory.

The statute itself contains the words "shall publish" and provides that "publication shall be made on or before July 10." (Ill. Rev. Stat. 1971, ch. 120, par. 584.) The use of the words "shall" or "must" is generally regarded as mandatory. However, the term "shall" does not have a fixed or inflexible meaning. It can, in fact, be construed as meaning "may," depending on the legislative intent. However, "[w]here the word is employed with reference to any right or benefit to anyone, and the right or benefit depends upon giving a mandatory meaning to the word, it cannot be given a permissive meaning ***. [Citations.]" (*Clark v. Patterson* (1905), 214 Ill. 533, 539; *cf. Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 272; 73 Am. Jur. 2d *Statutes* sec. 22 (1974).) Thus, proper interpretation of the provision cannot simply be based on its language; it must be grounded on the "nature, objects and the consequences which would result from construing it one way or another." *Carrigan v. Illinois Liquor Control Com.* (1960), 19 Ill. 2d 230, 233.

In brief summary, when a statute prescribes the performance of an act by a public official or a public body, the question of whether it is mandatory or directory depends on its purpose. If the provision merely directs a manner of conduct for the guidance of the officials or specifies the time for the performance of an official duty, it is directory, absent negative language denying the performance after the specified time. If, however, the conduct is prescribed in order to safeguard someone's rights, which may be injuriously affected by failure to act within the specified time, the statute is mandatory. *Carrigan v. Illinois Liquor Control Com.* (1960), 19 Ill. 2d 230, 233; see 67 C.J.S. *Officers* sec. 114 (1950); 72 Am. Jur. 2d *State & Local Taxation* sec. 709 (1974).

This court has held that provisions for publication and notice, such as the one at bar, are designed for the benefit and protection of taxpayers. As noted above, in *Jennings* we specifically emphasized that publication under section 103 was not designed for the guidance of public officers, but was designed to afford the taxpayers information and the opportunity to evaluate the reasonableness of their assessments.

Defendant contends that the notice mailed to the plaintiffs was sufficient to validate the tax. Although actual notice and the opportunity to be heard are sufficient to satisfy due process requirements (see *People ex rel. Ball v. Anderson* (1961), 21 Ill. 2d 396, 401; *People v. Holmstrom* (1956), 8 Ill. 2d 401, 406; *Dietman v. Hunter* (1955), 5 Ill. 2d 486), plaintiffs do not allege a violation of due process; they allege the violation of a statutory duty. The notices mailed to and received by the taxpayers were also sent subsequent to the July 10 deadline and suffer the same infirmities as a late publication. Also, as noted in *Jennings,* the purpose of the publication requirement is not alone to provide notice of the assessment to the taxpayer, but it is also to give the taxpayer an opportunity to ascertain whether the assessment is excessive or disproportionate. In *People v. Holmes* (1968), 98 Ill. App. 2d 11, 17, the appellate court stated:

"[I]n order for a taxpayer to determine if his assessment is disproportionate or excessive, he must be able to compare his assessment with other taxpayers."

Therefore, aside from the fact that the mailed notice was not given within the time required by statute, it could not supplant the statutory requirement of publication.

In light of the nature and purpose of the publication requirement, therefore, we must conclude that section 103 is mandatory and requires strict and timely compliance. Since the petitioner failed to make timely publication as

required by section 103, the tax resulting from the increase in assessment is invalid.

Defendant, however, also contends that section 235 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 716) constitutes a saving clause, and thus the tax should be held valid in spite of the late publication. Section 235 provides in relevant part:

> "[N]o error or informality in the proceedings of any of the officers connected with the assessment, levying or collection of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof; and any irregularity or informality in the assessment rolls or tax lists, or in any of the proceedings connected with the assessment or levy of such taxes, or any omission or defective act of any other officer or officers connected with the assessment or levying of such taxes, may be, in the discretion of the court, corrected, supplied and made to conform to law ***."

Defendant contends that failure to make timely publication is the type of error or informality specifically encompassed by section 235, especially since the substantial justice of the tax was not affected. He argues that eventual publication of the increased assessments indicates that defendant attempted to comply with the publishing requirement. We disagree. Eventual publication by itself is irrelevant to show any attempt to make *timely* publication. Under defendant's reasoning, presumably any publication, no matter how late, would tend to show an attempt at compliance. We note that this argument was first raised on appeal. However, the records and briefs do not indicate that any attempt was made to comply with the publication date, nor do they disclose any explanation for defendant's disregard of the statute. In addition, previous cases have interpreted section 235 as applicable only "where there has been an attempt to comply with the law but the attempt is not effective on account of some

informality or clerical error." (*People v. Jennings* (1954), 3 Ill. 2d 125, 129; *People ex rel. Wangelin v. City of St. Louis* (1937), 367 Ill. 57, 69.) We do not consider the failure to comply with a mandatory requirement of publication to be "some informality or clerical error."

Defendant also urges that we consider the serious impact on taxing bodies and recipients of tax revenue as a result of holding the tax invalid. We note that publication may have occurred as late as October 28, more than three months after it was due. In addition, the mailed notice was also sent some time after July 10. While we are not unsympathetic to the loss of revenue involved here, we cannot sanction such delay in providing taxpayers with the required statutory publication of increased assessments. Although there is no prescribed date for publication in quadrennial years, it is our opinion that the legislature intended that taxpayers can at least rely on the July 10 deadline in nonquadrennial years where increases are not necessarily expected. A similar public policy argument was made in *Jennings* to which this court replied:

"It is argued that allowing the omission of a publication to defeat the tax would be contrary to public policy and against the best interests of the general public. The argument misconceives the function of this court. Such matters must be addressed to the General Assembly, which is entrusted with the duty of determining public policy and promoting the general welfare. This court can only ascertain and apply the intention expressed by that body. The legislature may readily indicate what the effect shall be, as it has with respect to other defects ***. [I]n the absence of appropriate provisions the nature of the requirement must govern the construction to be given by this court, and it must therefore be regarded as mandatory." 3 Ill. 2d 125, 130-31.

For the reasons above stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

In *People v. Jennings* (1954), 3 Ill. 2d 125, this court held that total failure to publish increased tax assessments is a valid objection under the Revenue Act of 1939 to payment of the tax based thereon. I agree with *Jennings,* but *Jennings,* in my judgment, does not support the result reached by the court in this case. The *Jennings* opinion indicates that court would not have reached the same conclusion here, and that delay in publication, as contrasted to a complete failure to publish, is not fatal where there is no showing that the taxpayer is prejudiced. Publication dates are mandatory only where, by their disregard, the taxpayer's "rights might be and generally would be injuriously affected" (3 Ill. 2d 125, 127). Obviously a taxpayer's rights "generally would be injuriously affected" where an increase in his assessment is never published and he has no notice of it. But that situation bears no resemblance to what occurred here. Not only was there published notice as the statute requires—in addition, the authorities mailed each taxpayer a notice of the increase. True, the notice was not published until after July 10, but the board of review remained in session for the purpose of hearing complaints. No taxpayer denies receiving notice, and each had the same opportunity to appear before the board of review that he would have had if publication had been made on July 10 as the statute directs. No taxpayer has made any attempt to demonstrate in what manner he has been prejudiced by the delay, and I can envision none.

I dislike taxes, inflation and governmental waste and inefficiency as much or more than most persons. But every member of this court is aware that few of the many

ministerial acts required of county or State officials in the tax assessing and collecting process have been accomplished in recent years by the statutorily directed dates. If for that reason we are to now commence invalidating taxes without first requiring a showing of prejudice to the objecting taxpayer, the collection of taxes will be seriously impeded.

If an additional reason to sustain the tax is thought necessary, it is to be found, I believe, in section 235 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 716), since the delay is one "not affecting the substantial justice of the tax itself." Mr. Justice Simkins, in his dissenting opinion in the appellate court, accurately interpreted the saving provision:

"Section 235 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 716) is specifically directed towards this kind of problem, that is, errors or informalities of procedure by the officials in the taxing process. Publication is not constitutionally required and could be eliminated altogether by the legislature. Infirmities in publication can even be retroactively eliminated by a curative act. (*People v. Holmstrom* (1956), 8 Ill. 2d 401, 134 N.E.2d 246.) There is a strong public policy behind section 235 that entire assessments should not be declared void due to a technicality when communties depend on these taxes to perform necessary functions of government. In view of that policy, the stipulated fact that plaintiffs received actual written notice, and the fact that plaintiffs did not show any prejudice from the belated publication, I would reverse the ruling of the trial court." 43 Ill. App. 3d 438, 443.

In my judgment the majority opinion unnecessarily and substantially interferes with the tax-collection process.

I would reverse the judgments of the appellate and circuit courts.

MR. JUSTICE MORAN joins in this dissent.