THE COUNTY OF SHELBY, Plaintiff-Appellee, *v.* ILLINOIS PROPERTY TAX APPEAL BOARD, Defendant-Appellant.—(GERTRUDE ANDERSON, Defendant.)

Fifth District   No. 79-135

Opinion filed February 25, 1980.

KARNS, J., dissenting.

William J. Scott, Attorney General, of Springfield (Gary D. Kuhar, Assistant Attorney General, of counsel), for appellant.

E. C. Eberspacher, State's Attorney, of Shelbyville, for appellee.

Mme JUSTICE SPOMER delivered the opinion of the court:

On August 17, 1978, relying on the recent opinion of the Illinois Supreme Court in *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 373 N.E.2d

1332, the Property Tax Appeal Board[1] ruled in numerous consolidated cases arising out of Shelby County, including the instant case, that increases in real estate assessments for 1976 were invalid because of the failure of the county supervisor of assessments to make timely publication of the intended changes as required by statute. On administrative review, the Circuit Court of Shelby County found that a statute passed by the General Assembly subsequent to the supreme court's opinion in *Andrews* had validated the increased assessments, and therefore reversed the decision of the Board. This appeal followed.

■■ At appellant's request we take judicial notice in the cases on appeal of the pleadings and papers filed with the circuit court but assigned only to case number 78-MR-13, all involving common questions of fact and law. The Illinois Supreme Court in *People v. Davis* (1976), 65 Ill. 2d 157, 161, 357 N.E.2d 792, 794, stated that "taking judicial notice of matters of record in other cases in the same court is simply an application of the increasingly recognized principle that matters susceptible of judicial notice include facts capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy," and we find this principle applicable to the present case.

The determinative issue before us is whether the purported validating statute violates the principle of separation of powers embodied in section 1 of article II of the Illinois Constitution. We find that it does, and is therefore void.

It is undisputed that the supervisor of assessments failed to publish increases in assessments made in a nonquadrennial year by July 10, 1976, as required by section 103 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 584). In the *Andrews* case, the supreme court held that the requirements of section 103 are mandatory, and that a tax resulting from an increase in assessment was invalid because timely publication in compliance with the statute had not been made.

What complicates the instant case is the passage by the General Assembly of Public Act 80-1471, effective November 30, 1978—after the decision of the Property Tax Appeal Board, but prior to the decision of the trial court, which was handed down on January 23, 1979. The statute provides in pertinent part as follows:

> "In all cases where real or personal property has been assessed for the purpose of taxation during the year 1978 and all years prior thereto as provided in the 'Revenue Act of 1939', filed May 17, 1939, as amended, except no timely publication of the assessment of real or personal property, or both, was made as provided by Section 103 of said 'Revenue Act of 1939', such assessments of real

---

[1] An administrative agency within the Illinois Department of Local Government Affairs. See Ill. Rev. Stat. 1977, ch. 120, par. 592.1 *et seq.*

or personal property, or both, are hereby validated for all purposes of taxation notwithstanding that the publication of the assessments of real or personal property, or both, was not made within the time provided by statute. The extension of taxes on such real or personal property assessments, or both, are made legal and valid for the purposes of collection of taxes notwithstanding that the publication of the assessments of real or personal property, or both, was not made within the time provided by statute." Ill. Ann. Stat., ch. 120, par. 799.1 (Smith-Hurd 1979).

The appellee contends here that this retroactive, validating, or curative act "is merely the legislature acting to ratify or confirm an act which it might lawfully have authorized in the first instance where the defect arises out of the neglect of some legal formality." Relying on *People v. Holmstrom* (1956), 8 Ill. 2d 401, 134 N.E.2d 246, the appellee argues that because the legislature might have lawfully and constitutionally authorized a change in assessed values without any publication at all, it may waive timely publication without contravening the doctrine of separation of powers.

We think, however, that the result here is dictated by the recent decision of the supreme court in *Roth v. Yackley* (1979), 77 Ill. 2d 423, 396 N.E.2d 520. In *Roth*, the court was confronted with a situation where the 80th General Assembly passed an amendatory act in response to a prior decision of the supreme court which had construed the meaning of the language used in section 10 of the Illinois Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 710) (*People v. DuMontelle* (1978), 71 Ill. 2d 157, 374 N.E.2d 205). The amendatory act amended section 10 and section 410 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1410), and purported to be declaratory of the existing law prior to its passage and to be applicable to events before its effective date. In rejecting the contention that the amendatory act nullified the effect of its previous decision, the supreme court stated:

"The General Assembly's declaration that the amendatory act applies to events which occurred before the effective date of the amendatory statute represents a legislative attempt to retroactively apply new statutory language and to thereby annul a prior decision of this court. This is an assumption by the General Assembly of the role of a court of last resort in contravention of the principle of separation of powers embodied in article II, section 1, of the Illinois Constitution of 1970, which provides: 'The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another.' (See *Federal Express Corp. v. Skelton* (1979), 265 Ark. 7, 199, 578 S.W.2d 1, 7-8; *Johnson v. Morris* (1976), 87 Wash.2d 922, 926, 557 P.2d 1299,

1303; 1A Sutherland, Statutes and Statutory Construction sec. 27.04 (4th ed. 1972).) While the General Assembly has the power to draft legislation and to amend statutes prospectively if it believes that a judicial interpretation was at odds with its intent (see *Bruni v. Department of Registration and Education* (1974), 59 Ill. 2d 6, 12, 319 N.E.2d 37; *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 456), it is the function of the judiciary to determine what the law is and to apply statutes to cases. (See *People v. Nicholls* (1978), 71 Ill. 2d 166, 179; *Belfield v. Coop* (1956), 8 Ill. 2d 293, 307.) The cases cited by the State do not recognize that the General Assembly may retroactively overrule a decision of a reviewing court. Instead they recognize only the power of the legislature to establish laws prospectively and to alter for future cases interpretations of statutes by reviewing courts. See *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 66; *State v. Bowman* (1962), 116 Ohio App. 285, 286-87, 187 N.E.2d 627, 629; *cf. People ex rel. Spitzer v. County of La Salle* (1960), 20 Ill. 2d 18, 28." 77 Ill. 2d 423, 428-29, 396 N.E.2d 520, 522.

The court also noted on page 428 that "it is logically difficult to perceive how the declaration and the amendments by the 80th General Assembly can be simply a clarification of the intent of the 77th General Assembly which originally enacted the statute *seven years earlier since only a fraction* of the individuals who comprised the General Assembly were the same at both times."

Prior to the decision in *Roth*, the same issue was raised, and the same amendatory act was involved in the case of *People v. Harris* (1979), 69 Ill. App. 3d 118, 387 N.E.2d 33. The court there held that the legislative amendments enacted after the *DuMontelle* decision were violative of the constitutional provision for the separation of powers in attempting retroactively to direct construction of the previously enacted sections and to reverse the construction placed upon them by the Illinois Supreme Court.

■■ ■ We think it clear that the purported validating statute at issue here likewise seeks to overrule retroactively the decision of the supreme court in *Andrews*. Once the court had explicated the mandatory nature of timely publication in *Andrews*, that explication became, in effect, a part of the statute until the General Assembly changed it. (*Roth v. Yackley* (1979), 77 Ill. 2d 423, 428-29, 396 N.E.2d 520, 522, and cases cited therein.) No subsequent action of the legislature could constitutionally alter the effect mandated by the court's interpretation as to past failures to make timely publication. Although in our opinion the decision in *Andrews* was not mandated by the case of *People v. Jennings* (1954), 3 Ill. 2d 125, 119 N.E.2d 781, because a distinction can well be made

between late publication with no prejudice to the taxpayer as contrasted with a total failure to publish, *Andrews* is nonetheless the law in Illinois, and binds this court in the case at bar. To the extent that the *Holstrom* case and other cases cited by the appellee are inconsistent with the result we reach here, we conclude that they have been effectively overruled by *Roth* and *Andrews*. In *Andrews* the court made it clear that the failure to comply with a mandatory requirement of publication is not merely the neglect of some legal formality. Thus, we conclude that *Andrews'* construction of the publication requirement as designed for the benefit and protection of the taxpayer—giving him an opportunity to ascertain the correctness of his assessment as compared with that of other taxpayers—gives the taxpayer in the case at bar a legal exemption from the invalid assessment increases in a nonquadrennial year. Such is more than a mere expectation based upon an anticipated continuance of the existing law, as contended by appellee, but amounts to a vested right arising from a final decision of the Illinois Supreme Court. We further hold that the Attorney General has standing to raise the vested rights theory in this appeal. *People ex rel. Scott v. Illinois Racing Board* (1973), 54 Ill. 2d 569, 301 N.E.2d 285; *Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill. 2d 394, 372 N.E.2d 50.

We therefore conclude that the Property Tax Appeal Board was correct in holding that the 1976 assessment increases in Shelby County were void because of the failure of the supervisor of assessments to make timely publication. The order of the Circuit Court of Shelby County is reversed, and the decision of the Property Tax Appeal Board is affirmed.

Reversed.

JONES, P. J., concurs.

Mr. JUSTICE KARNS, dissenting:

These numerous cases arise from a general, nonquadrennial reassessment of all real property in Shelby County, approximately 21,000 parcels, mandated by the Department of Local Government Affairs in order to equalize property assessments in Shelby County at the statutorily required percentages of fair market value. The reappraisal work was performed in 1975 and 1976. The Department of Local Government Affairs had issued an opinion to the Shelby County authorities that the July 10 publication date was directory, not mandatory. *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 373 N.E.2d 1332, was pending in the trial court in Vermilion County when changes in assessment were published in Shelby County on December 7, 1976. The reassessments had not been completed by the July 10 statutory date. Property owners were also

mailed notice of any change in assessment. The Board of Review of Shelby County remained in session, as its term was extended by the Department of Local Government Affairs, and approximately 3,500 complaints were filed and hearings were had before the Board. After decisions by the Board of Review, some 1,600 appeals were perfected to the Property Tax Appeal Board where 1,400 cases were consolidated and approximately 1,283 decided after the supreme court's decision in *Andrews v. Foxworthy.*

I do not believe that the result reached by the majority follows from the supreme court's decision in *Roth v. Yackley* (1979), 77 Ill. 2d 423, 396 N.E.2d 520. *Roth* dealt with an attempt by the General Assembly to alter, retroactively, the construction the supreme court had theretofore placed on section 10 of the Illinois Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 710) in *People v. DuMontelle* (1978), 71 Ill. 2d 157, 374 N.E.2d 205. *Roth v. Yackley*, however, in reality dealt with an attempt by the General Assembly to increase the penalty for a crime after its commission.

The punishment for a criminal offense cannot be increased by an amendatory statutory enactment taking effect after the offense has been committed. (*People v. Peach* (1976), 39 Ill. App. 3d 757, 350 N.E.2d 583; Ill. Rev. Stat. 1977, ch. 131, par. 4.) The supreme court had placed a construction on the Cannabis Control Act in *DuMontelle*. Roth was entitled to the benefit of this construction of the Act. Otherwise, the General Assembly could effectively increase the punishment for a violation of the Act by presuming to direct the court as to the proper construction and interpretation of the Act as it would have accomplished by amending the Act to take effect retroactively. *Ex post facto* laws are proscribed by the Constitution of the United States and by article 1, section 16 of the Illinois Constitution of 1970. A law increasing the penalty for a crime retroactively is an *ex post facto* law. *People v. Bowling* (1976), 43 Ill. App. 3d 932, 357 N.E.2d 724; *People v. Johnson* (1970), 133 Ill. App. 2d 818, 263 N.E.2d 901; *People v. Wyckoff* (1969), 106 Ill. App. 2d 360, 245 N.E.2d 316.

While the supreme court did not discuss *ex post facto* application of criminal laws in *Roth v. Yackley*, no discussion was warranted as the amendment to the Cannabis Control Act did not purport to be a validating or curative act but a clarification of prior legislative intent. In the area of civil legislation, however, specifically those statutes dealing with property taxation, it has been uniformly held that no one has a vested right in the continuation of a particular statutory enactment so long as the effect of the legislative action does not impair the obligation of a contract. *People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367, 21 N.E.2d 318; *People ex rel. Toman v. B. Mercil & Sons Plating Co.* (1941), 378 Ill. 142, 162-63, 37 N.E.2d 839, 850.

In *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 373 N.E.2d 1332, the supreme court emphasized that the publication of assessment roles or changes in a property owner's individual assessment was not required by any constitutional mandate. The passage of Public Act 80-1471, effective November 30, 1978, prior to the decision of the circuit court in the instant cases, simply changed the law applicable to these cases by no longer requiring publication by July 10. Validating or curative acts have long been upheld in the area of property taxation. See *People ex rel. Ball v. Anderson* (1961), 21 Ill. 2d 396, 172 N.E.2d 760; *People ex rel. Bauer v. Elmhurst—Villa Park—Lombard Water Com.* (1960), 20 Ill. 2d 139, 169 N.E.2d 350; *People v. Holmstrom* (1956), 8 Ill. 2d 401, 134 N.E.2d 246.

The effect of the amendment to the statute was not to overrule retroactively the decision of the supreme court in *Andrews v. Foxworthy*; that case had been finally decided. It did change the law as it applied to similar cases between different parties that were not yet before the court. I see nothing in *Andrews* that suggests an intention to overrule *People v. Holmstrom* (1956), 8 Ill. 2d 401, 134 N.E.2d 246. In *Holmstrom*, the supreme court approved a validating act that cured the failure to publish assessments for 1954 and all prior years by the date required by the Revenue Act. This is precisely what the General Assembly has done here. The fact that the supreme court had ruled in another case between different parties when the Revenue Act required publication by July 10 seems to me of no consequence to the proper decision of these cases.