*In re* APPLICATION OF COOK COUNTY TREASURER.—(BERNARD J. KORZEN, Collector-Appellee, *v.* MOTOROLA, INC., Objector-Appellant.)—*In re* APPLICATION OF COOK COUNTY TREASURER.—(BERNARD J. KORZEN, Collector-Appellee, *v.* THE HALLICRAFTERS CO., Objector-Appellant.)

First District (3rd Division)    Nos. 80-2438, 80-2439 cons.

Opinion filed May 19, 1982.

Richard B. Finn, Erwin I. Katz, and Paula K. Jacobi, all of Chicago (Hoffman & Davis, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey and Thomas J. McNulty, Assistant State's Attorneys, of counsel), for appellee.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

This is an appeal by Motorola, Inc. and the Hallicrafters Co. (hereinafter sometimes referred to as "tax objectors") from an order of the circuit court of Cook County denying the motions of the tax objectors for summary judgment and granting summary judgment in favor of the county collector of Cook County.

In 1972, each tax objector owned real property in Palatine Township, Cook County, Illinois. Palatine Township was a part of assessment district number one of Cook County, and 1972 was the year of quadrennial assessment for all real properties in that assessment district.

On August 24, 1972, the assessor of Cook County completed his quadrennial assessment for Palatine Township. On August 28, 1972, the board of appeals published a notice that it would accept valuation complaints for revision and correction of the 1972 real estate assessments for Palatine Township from September 1, 1972, through September 19, 1972. Both tax objectors filed timely complaints with the board of appeals, and, after hearings, final decisions were rendered by the board of appeals on October 20, 1972. Hallicrafters Co. obtained minor relief. Also, on October 20, 1972, the board of appeals completed its review of the 1972 real estate assessment for Palatine Township. On October 31, 1972, the county assessor published a list of quadrennial assessments for Palatine Township in the *Palatine Herald and Rolling Meadows Herald.*

This was the first and only publication ever made by the county assessor of his 1972 quadrennial assessment of real property for Palatine Township. On December 26, 1972, the assessor completed the quadrennial assessment for the first assessment district.

The record also shows that in two other townships in assessment district number one, Barrington Township and Rogers Park Township, as well as Palatine Township, publication did not occur until after the board of appeals completed its revision and returned the assessment books to the county assessor. In the seven other townships subject to quadrennial assessment, publication of the assessment list occurred prior to the review of the assessments by the board of appeals.

The issues presented for review are: (1) whether the 1972 quadrennial assessments of the tax objectors' properties were invalid because the county assessor failed to comply with the publication requirements of section 104 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 585); (2) whether the publication of the list of assessments, after the hearings by the board of appeals were completed, deprived the tax objectors of their property without due process of law; and (3) whether the tax objectors were denied the equal protection of the laws because taxpayers in seven of the 10 townships which make up assessment district number one had the opportunity to compare their assessments with those of others in their township prior to hearings by the board of appeals, whereas taxpayers in Palatine Township had no such opportunity. Because we conclude that the county assessor failed to comply with the mandatory publication requirements of section 104, and consequently, that the 1972 quadrennial assessments of the tax objectors' properties were invalid, we do not reach the constitutional questions.

Section 104 of the Revenue Act of 1939 provides in relevant part:

"In counties containing 2,000,000 or more inhabitants, * * * in each year of a quadrennial assessment of real property, for such county or assessment district * * * *the county assessor shall publish a full and complete list of his assessment of real property as soon as such assessment is completed in the manner as is provided in this section.* * * * Such publication shall contain a copy of the land value map for the township, if required by the Department." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 120, par. 585.

The two basic elements of this section relevant to this appeal are that the publication be a full and complete list of the county assessor's assessment and that publication be made as soon as such assessment is completed. There can be little doubt that the publication provisions of section 104 are mandatory, as opposed to merely directory, and that strict compliance with them is required. A review of case law under section 103 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 584), a

companion statute relating to publication in counties with less than two million inhabitants, compels this conclusion. *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 373 N.E.2d 1332; *People v. Jennings* (1954), 3 Ill. 2d 125, 119 N.E.2d 781.

In *Jennings*, a list of personal property assessments was not published in a newspaper, as required by section 103. Our supreme court held that the requirement of publication of the assessment list was mandatory, and that failure to comply with the requirement rendered the tax imposed invalid. In *Andrews*, the supervisor of assessments failed to publish increases in real estate assessments made in 1972, a nonquadrennial year, by July 10, 1972, as required by statute, but did publish later. The court held that the publication requirement in section 103 is mandatory, and that the tax resulting from the increase in assessments was invalid because of the failure to make timely publication.

The *Andrews* court briefly summarized the distinction between mandatory and directory statutes:

"[W]hen a statute prescribes the performance of an act by a public official or a public body, the question of whether it is mandatory or directory depends on its purpose. If the provision merely directs a manner of conduct for the guidance of the officials or specifies the time for the performance of an official duty, it is directory, absent negative language denying the performance after the specified time. If, however, the conduct is prescribed in order to safeguard someone's rights, which may be injuriously affected by failure to act within the specified time, the statute is mandatory. [Citations.]" 71 Ill. 2d 13, 21.

The publication requirements of section 104 are intended not only to give notice of the assessment to the taxpayer, but also "to give the taxpayer an opportunity to ascertain whether the assessment is excessive or disproportionate." (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 22.) " '[I]n order for a taxpayer to determine if his assessment is disproportionate or excessive, he must be able to compare his assessment with other taxpayers.' " (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 22; *People ex rel. Republican-Reporter Corp. v. Holmes* (1968), 98 Ill. App. 2d 11, 17, 239 N.E.2d 682.) In short, publication is not designed for the guidance of public officers, but for the benefit and protection of taxpayers. (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 22.) Accordingly, we conclude that the publication requirements of section 104 are mandatory, and that they require strict and timely compliance.

The issue, therefore, becomes whether there was strict and timely compliance with section 104. Did the publication of the assessor's list of quadrennial assessments on October 31, 1972, comply with the statutory requirement that the publication be done "as soon as such assessment is

completed?" And this question in turn depends upon whether the assessment referred to is of the township or of the assessment district. Here the date of publication was more than two months after the assessment of Palatine Township was completed, but it was almost two months before the assessment for all of assessment district number one was completed. The trial court, citing various amendments that have been made to section 104, concluded that in light of its legislative history, section 104 directs the county assessor to publish as soon as the quadrennial assessment of the assessment district is completed. As a result, the trial court concluded that the assessor's duty to publish did not arise until December 26, 1972, when the assessment of district number one was completed, and that the publication of the assessment list for Palatine Township on October 31, 1972, did not violate his statutory duty.

Legislative history of section 104 lends this theory some credence. In 1941, section 104 directed:

> "* * * the county assessor shall publish a full and complete list, *by townships, if the county be so organized,* * * * as soon as such assessment has been equalized, revised or affirmed by the board of appeals. * * *" (Emphasis added.) (Ill. Rev. Stat. 1941, ch. 120, par. 585.)

Section 104 as it then existed, required that publication be on a township-by-township basis and after the board of appeals had completed its work as to each township. However, the trial court observed that in 1961, section 104 was amended, removing both the requirement that publication be made after the board of appeals had completed its work and the reference to publication by townships. (Ill. Rev. Stat. 1961, ch. 120, par. 585.) The trial court stated that it would not ignore the 1961 amendment, and therefore it construed section 104 as authorizing publication by assessment district.

The tax objectors argue that section 104 contemplates publication by township. They argue that, historically, publication of assessments has been made township-by-township. They also note that, even after the 1961 amendment, section 104 retained the following language: "Such publication shall contain a copy of the land value map *for the township,* if required by the Department." (Emphasis added.) (Ill. Rev. Stat. 1961, ch. 120, par. 585.) Thus, they argue that the statute contemplates publication on a township-by-township basis, despite the 1961 amendment. We note here that the second paragraph of section 104 contemplates publication of a township's assessment list in a township newspaper.

■■ We do not resolve the issue of whether publication has to be done on a township-by-township basis or whether it can be done on an assessment district basis, because we conclude that under either method, the publication in the instant case did not comply with the mandatory provisions of

section 104 that the publication be a full and complete list of the assessment and that the publication be made as soon as the assessment is completed. If publication has to be done on a township-by-township basis, then publication occurred more than two months after the county assessor completed his assessment for Palatine Township and after the board of appeals had completed its review of the 1972 real estate assessment for Palatine Township. Under these circumstances, if publication is to be made by township, we cannot hold that there was strict and timely compliance with the mandatory duty to publish.

If publication is to follow soon after the completion of assessment of the assessment district, then the October publication of Palatine Township assessments almost two months before the assessments for assessment district number one were completed, was perhaps timely. However, if publication is to be by assessment district, then certainly the county assessor failed to publish a full and complete list of his assessments for assessment district number one. Rather, in this case the county assessor made a series of publications over a three-month period, and each publication contained only the assessment list for a single township.

■■ The county collector's brief suggests the argument that it would be contrary to public policy and against the best interests of the general public to allow the omission of publication to defeat the tax. This argument is satisfactorily resolved by *Jennings,* where our supreme court stated: "This court can only ascertain and apply the intention expressed by [the General Assembly]." 3 Ill. 2d 125, 130.[1]

For the aforementioned reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded to that court for further proceedings consistent with the views expressed herein.

Reversed and remanded.

McGILLICUDDY and RIZZI, JJ., concur.

---

[1] We note that the trial court in its order observed that any remedy the tax objectors might have may be illusory by reason of application of sections 220 and 222 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, pars. 701, 703), concerning the taxation of omitted or defectively described or assessed property, or by reason of subsequent legislative action validating the assessment despite lack of timely publication. (See Ill. Rev. Stat. 1979, ch. 120, par. 799.1; *Schlenz v. Castle* (1981), 84 Ill. 2d 196, 417 N.E.2d 1336, *appeal dismissed* (1981), ___ U.S. ___, 70 L. Ed. 2d 73, 102 S. Ct. 76; *People v. Holmstrom* (1956), 8 Ill. 2d 401, 134 N.E.2d 246, *appeal dismissed* (1956), 352 U.S. 938, 1 L. Ed. 2d 235, 77 S. Ct. 262.) Since the parties' briefs do not address these issues, we do not address them here.