(No. 51478.-

RANDY ROTH, Appellant, v. FRANK X. YACKLEY
*et al.,* Appellees.

*Opinion filed October 2, 1979.—Rehearing*
*denied November 30, 1979.*

UNDERWOOD, J., and GOLDENHERSH, C.J., dissenting.

James Geis, of Geis & Geis, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel and Patricia Rosen, Assistant Attorneys General, of Chicago, of counsel), for appellees.

William T. Dwyer, Jr., of Connolly, Dwyer & Ekl, of Chicago, for *amicus curiae* Janice Porter.

Samelson, Knickerbocker & Schirott, of Des Plaines (James R. Schirott, of counsel), for *amici curiae* County of Du Page *et al.*

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This cause involves two separate class actions filed in the circuit court of La Salle County on May 4, 1978. The plaintiffs sought the return of fines and costs paid as conditions of probation incident to deferred dispositions of criminal charges under section 10 of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 710) and section 410 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1410). On May 23, 1978, amended complaints were filed substituting a party plaintiff in each cause. Both complaints were premised on *People v. DuMontelle* (1978), 71 Ill. 2d 157, in which this

court had held that fines and costs were not reasonable terms and conditions of probation as that term was used in section 10 of the Cannabis Control Act and that therefore the imposition of fines and costs was not authorized by statute. Plaintiffs contended that fines and costs thus improperly collected should be refunded.

Defendants filed identical motions to strike and dismiss both complaints and at the hearing held on July 5, 1978, brought the trial court's attention to amendments to section 10 of the Cannabis Control Act (Ill. Rev. Stat., 1978 Supp., ch. 56½, par. 710) and section 410 of the Illinois Controlled Substances Act (Ill. Rev. Stat., 1978 Supp., ch. 56½, par. 1410) which were approved and became effective on June 30, 1978, approximately three months after the opinion in *DuMontelle* was filed. The amendments expressly authorized the imposition of fines and costs as conditions of probation. Section 3 of the amendatory act, which made the changes in both section 10 and section 410, further provided:

> "The General Assembly declares that the changes made by this amendatory Act *** are declaratory of existing law and are therefore applicable in relation to events which occurred before the effective date of this amendatory Act. The 'terms and conditions' of probation as specified in this amendatory Act are declared to be reasonable terms and conditions for probation under the affected Sections as those Sections were in effect before the effective date of this amendatory Act." Pub. Act 80–1202, sec. 3, eff. June 30, 1978.

Defendants argued that the amendments effectively nullified *DuMontelle.* In response, plaintiffs contended that the language in the amendatory act retroactively declaring that the law was other than as stated in *DuMontelle* should be given no effect because it violated the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, sec. 1).

On August 31, 1978, the circuit court entered

amended orders granting defendants' motions to strike and dismiss both complaints, stating *inter alia* that the amendatory legislation clarified the General Assembly's intentions as to the existing statutes and that the amendments clearly controlled the rule announced in *DuMontelle*. On December 28, 1978, this court allowed plaintiffs' motion for direct appeal under Rule 302(b) (58 Ill. 2d R. 302(b)). The sole issue before us concerns the effect which may constitutionally be given to the amendatory act.

In *DuMontelle* this court examined section 10 of the Cannabis Control Act, which then provided in relevant part that "[w]henever any person who has not previously been convicted of any offense under [the] Act" pleads or is otherwise found guilty, "the court may, without entering a judgment of guilt ***, defer further proceedings and place him on probation upon *reasonable terms and conditions* as it may require. *** Discharge and dismissal under this Section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime ***." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 56½, par. 710.) This court concluded that "the clear import of the statutory language" was that disposition by probation under section 10 was not a conviction (71 Ill. 2d 157, 163) and that therefore the imposition of fines and costs was not a reasonable term and condition authorized by statute (71 Ill. 2d 157, 164-65). Section 410 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1410) was nearly identical to section 10 of the Cannabis Control Act.

In the June 30, 1978, amendments to both the Cannabis Control Act and the Illinois Controlled Substances Act, the General Assembly deleted the statement that the court was to place "reasonable terms and conditions" on probation and changed the statutory language to expressly catalog certain authorized conditions

of probation, including the imposition of fines and costs. The amended acts provide that "[t]he court may, in addition to other conditions, require that the person: \*\*\* (2) pay a fine and costs; \*\*\*." (Ill. Rev. Stat., 1978 Supp., ch. 56½, pars. 710(c)(2), 1410(c)(2).) The amended acts further state that "[a] disposition of probation is considered to be a conviction for the purposes of imposing the conditions of probation \*\*\*." (Ill. Rev. Stat., 1978 Supp., ch. 56½, pars. 710(f), 1410(f).) Thus, although the General Assembly asserted that the changes made by the amendatory act were merely a declaration of existing law, it is manifest that the amendatory act changed the statutory language and prior law as determined by this court in *DuMontelle* from the clear import of the original statutory language. This court's explication of the statute had become, in effect, a part of the statute until the General Assembly changed it. *City of Decatur v. Curry* (1976), 65 Ill. 2d 350, 359; *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 456.

The statutory language dictated the holding in *DuMontelle*; therefore analysis of the legislative intent was not a necessary part of the decision. The General Assembly's subsequent declaration of prior intent cannot alter the clear import of the prior statutory language. Furthermore, even if prior legislative intent had been important for decision in *DuMontelle,* it is logically difficult to perceive how the declaration and the amendments by the 80th General Assembly can be simply a clarification of the intent of the 77th General Assembly which originally enacted the statute seven years earlier since only a fraction of the individuals who comprised the General Assembly were the same at both times. See *Federal Express Corp. v. Skelton* (1979), 265 Ark. 187, 199, 578 S.W.2d 1, 8.

The General Assembly's declaration that the amendatory act applies to events which occurred before the effective date of the amendatory statute represents a

legislative attempt to retroactively apply new statutory language and to thereby annul a prior decision of this court. This is an assumption by the General Assembly of the role of a court of last resort in contravention of the principle of separation of powers embodied in article II, section 1, of the Illinois Constitution of 1970, which provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (See *Federal Express Corp. v. Skelton* (1979), 265 Ark. 187, 199, 578 S.W.2d 1, 7-8; *Johnson v. Morris* (1976), 87 Wash. 2d 922, 926, 557 P.2d 1299, 1303; 1A Sutherland, Statutes and Statutory Construction sec. 27.04 (4th ed. 1972).) While the General Assembly has the power to draft legislation and to amend statutes prospectively if it believes that a judicial interpretation was at odds with its intent (see *Bruni v. Department of Registration and Education* (1974), 59 Ill. 2d 6, 12; *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 456), it is the function of the judiciary to determine what the law is and to apply statutes to cases. (See *People v. Nicholls* (1978), 71 Ill. 2d 166, 179; *Belfield v. Coop* (1956), 8 Ill. 2d 293, 307.) The cases cited by the State do not recognize that the General Assembly may retroactively overrule a decision of a reviewing court. Instead they recognize only the power of the legislature to establish laws prospectively and to alter for future cases interpretations of statutes by reviewing courts. See *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 66; *State v. Bowman* (1962), 116 Ohio App. 285, 286-87, 187 N.E.2d 627, 629; *cf. People ex rel. Spitzer v. County of La Salle* (1960), 20 Ill. 2d 18, 28.

In sum, we find that the General Assembly cannot constitutionally overrule a decision of this court by declaring that an amendatory act applies retroactively to cases decided before its effective date. Accordingly, the order of the circuit court striking and dismissing plaintiffs'

complaints on the basis of the amendments to the Cannabis Control Act and the Illinois Controlled Substances Act is reversed, and the cause is remanded for a determination of whether this cause was properly brought as a class action and whether the plaintiffs are entitled to the relief they sought.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE UNDERWOOD, dissenting:

I cannot agree with the court that "[t]he sole issue before us concerns the effect which may constitutionally be given to the amendatory act" (77 Ill. 2d at 427) or that there is any need to discuss that question at all. In my view the dispositive issue in this case is whether plaintiffs may collaterally attack the judgments imposing terms and conditions of probation after failing to object or appeal at the time they were imposed. Until now I had thought it entirely clear that under long-settled principles of *res judicata* they may not.

No question is raised here of the applicability of section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72) since plaintiffs have not petitioned under its terms. Likewise, the *habeas corpus* act (Ill. Rev. Stat. 1977, ch. 65, par. 22) and the Post-Conviction Hearing Act (Ill. Rev. Stat. 1977, ch. 38, par. 122—1 *et seq.*) are unavailable because plaintiffs are not incarcerated and there is no claim that they have suffered substantial denial of constitutional rights. The availability of relief must therefore depend on the common law principles governing collateral attack on judgments.

The basic and universally recognized rule (46 Am. Jur. 2d *Judgments* sec. 621 (1969)) delimiting the availability of collateral attack has been stated innumerable times by this court over the years. In *People v. Kidd* (1947), 398 Ill. 405, 409-10, the court gave a comprehensive statement of

this rule:

"If a court has jurisdiction its judgment may be directly attacked for errors or irregularities, but however manifestly erroneous the decision may be, it is binding upon all parties and privies until it is reversed or set aside in a direct proceeding for that purpose. (*Harding Co. v. Harding,* 352 Ill. 417; *Markley v. People ex rel. Kochersperger,* 171 Ill. 260.) Jurisdiction to hear and decide a cause necessarily includes the right to render an erroneous decision. (*Murch v. Epley,* 385 Ill. 138.) The judgment of a court which had jurisdiction is immune from collateral attack, even though such judgment is erroneous. (*Woodward v. Ruel,* 355 Ill. 163.) This rule was annouced by this court many years ago in the case of *Young v. Lorain,* 11 Ill. 624. We there stated that when a court has properly acquired jurisdiction and is authorized to hear and adjudge, and its judgment 'being thus entered by authority of law, no matter how erroneous it may be, or even absurd—though it be made in palpable violation of the law itself, and manifestly against the evidence—is, nevertheless, binding upon all whom the law says shall be bound by it, that is, upon all parties and privies to it, until it is reversed in a regular proceeding for that purpose. While it remains a judgment, it cannot be inquired into, nor its regularity questioned, in any collateral proceeding. \*\*\*.' A judgment which is null and void may not be used as a basis for the application of the doctrine of *res judicata,* but a judgment does not lose its effectiveness as *res judicata* from the mere fact that it is irregular or erroneous. The doctrine of *res judicata* is not dependent upon the correctness of the judgment, or of the verdict or finding on

which it is based. (30 Am. Jur. 939, sec. 198; *Phelps v. City of Chicago,* 331 Ill. 80; *McFall v. Kirkpatrick,* 236 Ill. 281.) Nor is the value of a plea of former adjudication to be determined by the reasons which the court rendering the former judgment may have had for doing so. (*City of Elmhurst v. Kegerreis,* 392 Ill. 195.) The effect of the former judgment as a bar is the same whether resting upon an erroneous view of the law or not. (*Baltimore Steamship Co. v. Phillips,* 274 U.S. 316, 47 S. Ct. 600.)"

No question is raised regarding the jurisdiction of the courts which imposed the fines and costs, and plaintiffs cannot escape the application of this long-settled rule. The case would be otherwise if the statute under which plaintiffs were prosecuted had later been held unconstitutional. This court has been scrupulous to afford some form of collateral attack to a defendant who asserts a substantial denial of his constitutional rights in the proceedings in which he was convicted. (See *People v. Meyerowitz* (1975), 61 Ill. 2d 200, 205, citing *People v. Sarelli* (1973), 55 Ill. 2d 169; *People v. Warr* (1973), 54 Ill. 2d 487; *People v. Pier* (1972), 51 Ill. 2d 96; *People v. Davis* (1968), 39 Ill. 2d 325.) There is no claim, however, that the statute authorizing probation in this case (Ill. Rev. Stat. 1973, ch. 56½, par. 710) was unconstitutional. This court merely held, in *People v. DuMontelle* (1978), 71 Ill. 2d 157, that imposition of a fine was not among the "reasonable terms and conditions" of probation authorized by the statute.

In the light of *DuMontelle,* therefore, the trial court that imposed fines upon the present plaintiffs simply misinterpreted the statute. For purposes of *res judicata,* however, a trial court's erroneous construction of a statute is no more vulnerable to collateral attack than any other form of nonconstitutional error. In *Chicago Title & Trust*

*Co. v. Mack* (1932), 347 Ill. 480, 486, this court noted that "[a]n erroneous decision arising from the misconstruction of a statute does not render the resulting judgment void," and the court accordingly refused to allow a collateral attack on the judgment. (See also *Lord v. Board of Supervisors* (1942), 314 Ill. App. 161.) In the context of Federal *habeas corpus,* a distinguished commentator has noted that "no one supposes that a person who is confined, after a proper trial, may mount a collateral attack because the court has misinterpreted a law of the United States; indeed the Supreme Court has explicitly decided the contrary even where the error was as apparent as could be." Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U. Chi. L. Rev. 142, 154 (1970), citing *Sunal v. Large* (1947), 332 U.S. 174, 91 L. Ed. 1982, 67 S. Ct. 1588.

Plaintiffs here could have objected to the imposition of the fines as a condition of probation. If their objections had been overruled, they could have appealed. Having failed to do so, they have allowed the trial court judgments to become *res judicata* and cannot now attack them. As Mr. Justice Douglas said in *Sunal v. Large* (1947), 332 U.S. 174, 182, 91 L. Ed. 1982, 1989, 67 S. Ct. 1588, 1593:

> "If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment *** litigation in these criminal cases will be interminable. Wise judicial administration of the *** courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court."

I would affirm the judgment of the circuit court dismissing the complaints.

MR. CHIEF JUSTICE GOLDENHERSH joins in this dissent.