**DOMINICK'S FINER FOODS, INC., Plaintiff,**

v.

**John G. MAKULA, Richard J. Mason, as Trustee, Sanwa Business Credit Corp., Thomas Havey and Company, and La-Salle National Bank, Defendants.**

No. 97 C 3731.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 9, 1997.

Barry Arnold Erlich, Katz, Randall & Weinberg, Chicago, IL, for Plaintiff.

Richard Joseph Mason, Ross & Hardies, P.C., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

This is an appeal by Dominick's Finer Foods, Inc. ("Dominick's") from a decision entered by the bankruptcy court on April 7, 1997 granting summary judgment as to Count I in favor of the bankruptcy trustee ("trustee") and denying Dominick's cross-motion for summary judgment. The summary judgment motions arose in the context of an adversary proceeding regarding the respective rights of the estate and Dominick's in a partnership interest held by John G. Makula

**552**

("Makula"). For the following reasons, the court affirms the decision of the bankruptcy court.

## BACKGROUND

The facts of this case are undisputed. In the summer of 1992, a suit was pending in the Circuit Court of Cook County by which Dominick's sought to enforce a guarantee Makula had signed on a lease. Dominick's moved for summary judgment and, on July 31, 1992, the Circuit Court granted Dominick's motion.

Pursuant to Illinois state procedure, on August 31, 1992, Makula filed a motion for reconsideration and a motion to vacate the judgment, which was served on September 9, 1992. Also on August 31, 1992, Dominick's obtained a citation to discover Makula's assets. This citation was never served. Instead, on September 25, 1992, Dominick's secured leave to serve an alias citation. On September 29, 1992, the clerk of the court issued this citation, which required Makula to appear for an examination as to his assets on October 29, 1992. On October 19, 1992, the citation was served.

Makula, however, believed that the alias citation was invalid. According to Makula, an alias citation cannot issue until the judgment becomes enforceable. Since there was a pending motion for reconsideration which stayed enforcement of the judgment, Makula argued that the alias citation was impermissibly obtained. Thus, rather than agreeing to appear for the examination, Makula filed a motion to quash service of the alias citation. This motion was continued by court order until March 25, 1993. Before the court was able to consider the motion to quash, however, on March 11, 1993, the court denied Makula's motion for reconsideration and motion to vacate the judgment.

Even if Makula was correct that the earlier citation was invalid, once the motion for reconsideration was denied and the judgment became enforceable, Dominick's could have reapplied for another citation and served it on Makula. However, Dominick's did not do this, instead it relied on the original alias citation.

On March 24, 1993, Makula, through his attorney, agreed to appear on April 8, 1993 in order to be examined pursuant to the citation to discover assets. At the time, the motion to quash was still pending and, by agreed order, the motion was continued from March 25, 1993 until April 19, 1993. However, Makula did not appear on April 8, 1993 for examination and did not appear in court on April 19, 1993 for the hearing on the motion to quash. Consequently, the Circuit Court struck the motion to quash and ordered Makula to appear on May 17, 1993 to show cause why he should not be held in contempt for failure to appear in response to the citation.

This rule to show case was never served on Makula. Instead, on May 17, 1993, the court issued an alias rule which was returnable on June 10, 1993. This alias rule was served on Makula on May 26, 1993. Nevertheless, Makula failed to appear. Instead, on June 10, 1993, Makula's attorney appeared on his behalf to file a motion to quash service of the rule to show cause based on improper service of process. The court continued the motion to June 21, 1993 for an evidentiary hearing on the motion to quash service. However, on June 18, 1993, before the hearing could be held, Makula filed a bankruptcy petition which stayed further proceedings. Richard Mason was appointed to serve as successor trustee.

In the bankruptcy court, Dominick's argued that it had a valid lien on 67 Class A partnership units that Makula owned in the Thomas Harvey Company, an accounting partnership, because of the service of the citation to discover assets. The trustee claimed, however, that there was no lien. First, the trustee argued that the citation was invalid since it was obtained while Makula had a motion to vacate pending which stayed enforcement of the judgment. Second, the trustee argued that the citation could not have created a lien on the partnership interest since the citation was served upon Makula rather than the partnership. Third, the trustee argued that a citation to discover assets does not create a lien under Illinois law. Finally, the trustee argued that the trustee could undue the lien through the

use of his strong-arm powers or as a preference.

The bankruptcy court found for the trustee. According to the court, while the citation was unenforceable since there was a pending motion to vacate which stayed enforcement of the judgment, the trustee was equitably estopped from asserting this argument because Makula agreed to appear. Furthermore, the court held that service of the citation upon Makula, and not the partnership, was sufficient. However, even though the citation could not be challenged, the court found that, under Illinois law, the citation did not create a lien. Therefore, the court ruled in favor of the trustee without reaching the question regarding the preference provisions of the bankruptcy code or the strong-arm powers of the trustee.

### ISSUES PRESENTED ON APPEAL

Several issues are presented on appeal. The first issue is whether, under Illinois law, service of the citation was valid and enforceable. If the citation is determined to be unenforceable, the second question is whether Makula, and hence the trustee, is estopped from arguing that the citation was unenforceable or whether Makula waived this argument. If the citation is valid, or if Makula is prohibited from arguing unenforceability, the next issue the court would have to consider is whether the citation was validly served. If it was validly served, then the next issue is whether a citation to discover assets created a lien under then-existing Illinois law. The final issue, which was not reached by the bankruptcy court, is whether, if a lien is created, it can be undone pursuant to either the trustee's strong-arm powers or pursuant to the preference provisions of the Bankruptcy Code.

### STANDARDS

According to Federal Rule of Bankruptcy Procedure 7056, summary judgment shall be granted whenever there is "no issue as to any actual fact and the moving party is entitled to judgment as a matter of law." FED. R.BANKR.P. 7056. This rule incorporates Federal Rule of Civil Procedure 56. There is no general issue of material fact if "the rec-

ord taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the nonmoving party could not prevail on its version of the facts, a trial is unnecessary and summary judgment should be granted. *Id.*

In this case, there is no dispute as to the facts. The bankruptcy court, in deciding the questions of law, ruled in favor of the trustee. Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, this court gives *de novo* review to questions of law. *In re Newman*, 903 F.2d 1150, 1152 (7th Cir.1990); *Calder v. Camp Grove State Bank*, 892 F.2d 629, 631 (7th Cir.1990).

### DISCUSSION

### Enforceability of Citation
### to Discover Assets

The court turns first to the issue of whether the citation to discover assets was enforceable. Under Illinois Supreme Court Rule 277(a), which lays down the procedure for commencing supplementary proceedings under 735 ILCS 5/2–1402, *see Bank of Matteson v. Brown*, 283 Ill.App.3d 599, 218 Ill.Dec. 825, 827, 669 N.E.2d 1351, 1353 (1996) (citation omitted), "[a] supplementary proceeding ... may be commenced at any time with respect to a judgment which is subject to enforcement." ILL.SUP.CT.R. 277(a). By extension, a litigant may not begin supplementary proceedings under 735 ILCS 5/2–1402 until the time when the judgment is enforceable. *Bank of Matteson*, 669 N.E.2d at 1353, 218 Ill.Dec. at 827 (citations omitted). When Dominick's secured leave to serve an alias citation on September 25, 1992, there were pending motions for reconsideration and to vacate. While Dominick's asserts that, despite these motions, the judgment was subject to enforcement, this argument is incorrect. According to 735 ILCS 5/2–1203(b), "a motion [to vacate] filed in apt time stays enforcement of the judgment." Thus, at the time the alias citation was issued, enforcement of the judgment in the underlying suit was stayed. As such, the judgment was not

subject to enforcement and the citation is unenforceable.

### Estoppel

The bankruptcy court found that, even though the citation to discover assets was unenforceable, the trustee is equitably estopped from asserting this argument. Bankr.Op. at 13. On March 11, 1993, Makula's motion for reconsideration and motion to vacate were denied. Thus, even though the citation to discover assets obtained in the fall of 1992 was unenforceable, after the motions were denied and the judgment became enforceable, Dominick's could have obtained another citation to discover assets that would have been enforceable. However, on March 24, 1993, Makula agreed to appear to be examined pursuant to the unenforceable alias citation, despite the fact that his motion to quash service of the citation was still pending. Makula never appeared to be examined. According to the bankruptcy court, Makula's promise caused Dominick's to forgo obtaining another citation to discover assets once the motions for reconsideration and to vacate were denied. The court held that "[i]t is plainly inequitable for the trustee to argue ... that the citation is unenforceable when Makula by his conduct, induced Dominick's to rely on the previously obtained citation." *Id.* at 14. This court, however, finds that the bankruptcy court erred in finding estoppel.

■ Under Illinois law, a party may be equitably estopped from asserting a defense even though the party did not intend to "waive" the defense. *Vaughn v. Speaker,* 126 Ill.2d 150, 127 Ill.Dec. 803, 808, 533 N.E.2d 885, 890 (1988), *cert. denied,* 492 U.S. 907, 109 S.Ct. 3218, 106 L.Ed.2d 568 (1989). This happens when six specific elements have been met. In order to succeed, the party asserting equitable estoppel must show: (1) words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) that the party against whom estoppel is alleged had knowledge, either actual or implied, at the time the representations were made, that they were untrue; (3) that the truth respecting the representations so made were unknown to the party claiming the ben-

efit of the estoppel at the time they were made and at the time they were acted on by him; (4) that the party estopped intended or expected that his conduct or representations would be acted on by the party asserting estoppel or by the public generally; (5) that the representations or conduct was relied and acted upon by the party claiming the benefit of estoppel; and (6) that the party claiming the benefit of estoppel would be prejudiced if the first party is permitted to deny the truth thereof. *Id. see also Lowenberg v. Booth,* 330 Ill. 548, 555–56, 162 N.E. 191 (1928).

■ In the present case, the court finds that Dominick's has not met its burden as to two of the elements. First, Dominick's has failed to establish that, when Makula agreed to appear for examination on April 8, 1993 pursuant to the citation, Makula had knowledge, either actual or implied, that he would not attend the examination. Dominick's has not introduced any evidence which would lead a finder of fact to this conclusion, *see* Dominick's 12(N) Statement ¶ 10. In fact, while Dominick's does claim in the memorandum of law it filed with this court that Makula's representation induced reliance, Dominick's does not claim that Makula knew, when making that statement, that he would not attend. *See* Dominick's Mem. at 21–22.

Furthermore, Dominick's cannot show that it did not know the truth respecting the representations at the time it acted on Makula's promise. While Dominick's may have decided not to attempt to have another citation issued because of the March 24, 1993 representation, by April 8, 1993, when Makula did not appear for examination, it was clear that Makula's representation was false. In order to prevent harm, at that point, Dominick's had every opportunity to seek the issuance of another citation. However, between April 8, 1993 and June 18, 1993, when Makula filed bankruptcy, Dominick's did not seek another citation. Therefore, equitable estoppel is not appropriate in this case.

### Waiver

Dominick's next argues that Makula waived the right to argue the enforceability of the citation in at least two ways. First,

Makula agreed to appear for examination on April 8, 1993 pursuant to the citation. Second, after failing to appear on April 19, 1993, the date on which Makula's motion to quash service of the citation was to be considered, Makula objected to the service of the rule to show cause, but failed to object to the validity of the underlying citation. The court agrees with the first of Dominick's arguments.

Under Illinois law, waiver is "the voluntary and intentional relinquishment of a known right." *Ciers v. O.L. Schmidt Barge Lines, Inc.*, 285 Ill.App.3d 1046, 221 Ill.Dec. 303, 306, 675 N.E.2d 210, 213 (1996), *appeal denied,* 173 Ill.2d 523, 226 Ill.Dec. 131, 684 N.E.2d 1334 (1997); *see also Vershaw v. Northwestern Nat'l Life Ins. Co.*, 979 F.2d 557, 560 (7th Cir.1992) (quoting *Pitts v. American Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir.1991)); *Vaughn,* 533 N.E.2d at 890, 127 Ill.Dec. at 808. "Waiver can arise either expressly or by conduct inconsistent with an intent to enforce that right." *Ciers,* 675 N.E.2d at 213, 221 Ill.Dec. at 306. However, the party who asserts the waiver argument has the burden of showing "a clear, unequivocal and decisive act" showing an intent to waive. *Id.* (citation omitted)

In the present case, Makula had resisted appearing for examination until March 24, 1993. On that date, Makula switched course and agreed to appear for examination. At the time, Makula's motion to quash the citation was still pending and, therefore, the agreement to appear for examination was, alone, not an unequivocal and decisive act, although it did suggest that Makula was conceding the validity of the citation. However, once Makula failed to appear to argue his motion to quash the citation on April 19, 1993, it became clear that, by agreeing to appear for examination, Makula intended to waive his right to argue unenforceability. In fact, his failure to appear caused the circuit court to strike the motion to quash. Therefore, the court finds that Makula's agreement to appear for examination and his failure to appear on April 19, 1993, in combination, express a clear and unequivocal intent to

abandon the right to contest the enforceability of the citation. As such, the court finds that Makula waived this argument and the trustee may not assert it here.

### Service on Makula as an Individual

Having found that Makula may not argue that the citation was unenforceable, the court next considers whether service of the citation on Makula was proper or whether, in order to create a lien on Makula's partnership interest, the partnership had to be served. According to the trustee, since the partnership had possession of any profits and surplus, the partnership had to be made a party to the supplemental proceeding. In so arguing, the trustee relies on *Appeal of Swartz,* 18 F.3d 413 (7th Cir.1994). In that case, the Seventh Circuit faced the question of whether a third party, who has possession of the property at issue, *i.e.,* stock certificates, was required to be made a party to the supplemental proceeding.

However, the court agrees with the bankruptcy court that *Appeal of Swartz* is not relevant to the case at hand. See Bankr.Op. at 16. Unlike in *Appeal of Swartz,* the partnership interest owned by Makula is intangible property over which no party has physical possession. Furthermore, in *Appeal of Swartz,* the third party held the stock certificates pursuant to a security agreement between it and the owner of the stock. The security agreement provided for the surrender of "possession of the stock certificates to [the third party] and authorized [the third party] to transfer the stock to its name". *Appeal of Swartz,* 18 F.3d at 417. Therefore, the third party had a clear interest in the stock. Here, however, the partnership did not have an interest in Makula's ownership rights. Under section 26 of the Illinois Uniform Partnership Act, "[a] partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." 805 ILCS 205/26.[1] As such, Makula's interest in the partnership was his and his alone. The partnership was not a required party and service on Makula was valid.

1. Formerly Ill. Revised Statute 1991, Chapter 106 1/2, Paragraph 26.

### Does the Citation Create a Lien?

Now that the court has determined that, under the procedural posture of this case, the citation to discover assets is to be considered valid and enforceable, the court must decide the issue of whether the citation created a lien. The Bankruptcy Court decided that the citation did not create a lien. This court agrees.

Under the current version of the Illinois statute governing supplementary proceedings, 735 ILCS 5/2–1402 (West 1997), which became effective on July 6, 1993, the Illinois legislature has made it clear that a judgment becomes a lien upon service of a citation. 735 ILCS 5/2–1402(m). However, the version of the statute which was effective in June, 1993, when Makula declared bankruptcy did not have any express language providing for the creation of a lien. Consequently, the case law is "muddled," with both state and federal courts splitting on whether a citation served under the pre–1993 statute created a lien. *Compare In re Foluke*, 38 B.R. 298 (Bankr.N.D.Ill.1984) and *Mid–West Nat'l Bank of Lake Forest v. Metcoff*, 23 Ill.App.3d 607, 319 N.E.2d 336 (1974) (both holding that a citation creates a lien) with *In re Jaffe*, 111 B.R. 701 (Bankr.N.D.Ill.1990) and *Kaiser–Ducett Corp. v. Chicago–Joliet Livestock Marketing Ctr.*, 86 Ill.App.3d 216, 41 Ill.Dec. 651, 407 N.E.2d 1149 (1980) (both holding that a citation does not create a lien).

Dominick's argues that, despite the confusion within the courts, the legislature has answered the question definitively. According to the 1993 amendment, the statement that a citation creates a lien is not just a statement of future law but "is a declaration of existing law." 735 ILCS 5/2–1402(m). Accordingly, Dominick's claims that the amendment should be applied retroactively.

■ When a legislature amends a statute, the normal presumption is that such amendment was intended as a change in the law. *Bloink v. Olson*, 265 Ill.App.3d 711, 202 Ill.Dec. 760, 764, 638 N.E.2d 406, 410 (1994). However, if it is clear from the circumstances that the legislature did not intend a change, then the presumption is overcome. *Id.* In this case, it is clear that, since the legislature believed that the law prior to 1993 was that a citation did create a lien, the legislature did not intend to change the law.

■ However, it is not clear that the court should adopt the legislature's interpretation of a previous statute.[2] Under the holding of *Roth v. Yackley*, 77 Ill.2d 423, 33 Ill.Dec. 131, 133, 396 N.E.2d 520, 522 (1979), the legislature may not state the intentions of a prior legislature in order to overrule a decision of a state court. The Illinois Supreme Court stated that, not only was it impossible for a later legislature to determine the intent of a prior legislature that had different members, but "it is the function of the judiciary to determine what the law is and apply statutes to cases." *Id.* Thus, a legislature's "subsequent declaration of prior intent cannot alter the clear import of the prior statutory language." *Id.*

■ Nevertheless, under Illinois precedent deference may be given to a legislative declaration of prior legislative intent when the statutory language is ambiguous. In *Commonwealth Edison Co. v. Department of Local Gov't Affairs*, 85 Ill.2d 495, 55 Ill.Dec. 492, 426 N.E.2d 817 (1981), the Supreme Court of Illinois found that, where terms in a statute were ambiguous, and where the legislature, without changing the substantive language of the statute, clarifies the previously ambiguous terms, and where Illinois courts had not interpreted the statute to resolve the ambiguity, it was appropriate to apply the interpretation given by the subsequent legislature. *Id.* at 821–22, 55 Ill.Dec. at 496–97. However, at the same time, the Court stated that "clear and unambiguous statutory language provides a better indicator of original legislative intent than does a subsequent amendment, which . . . is equivocal in nature and may indicate either a change in policy by the legislature or its intent to correct an erroneous interpretation of the statute." *People v. Hare*, 119 Ill.2d 441, 116 Ill.Dec. 664, 668, 519 N.E.2d 879, 883 (1988).

2. Furthermore, there is no indication that the legislature intended the law to apply retroactively.

At least two courts have held that, since courts have split on the issue of whether a citation to discover assets creates a lien, ambiguity exists and the court should apply the legislative declaration of its prior intent. *See In re Prior,* 176 B.R. 485 (Bankr.S.D.Ill. 1995); *Bloink,* 638 N.E.2d at 410, 202 Ill.Dec. at 764. According to one court, since there was not a "definitive interpretation" of the statute as there had been in *Roth,* it was appropriate to give such deference. *In re Prior,* 176 B.R. at 494.

■■■■ However, this court disagrees with those decisions. While it is true that courts have split on the issue, the court still finds that the pre–1993 statute was clear and unambiguous. Nowhere in the pre–1993 statute does the legislature state an intent to create a lien. Under Illinois law, a lien is "a legal claim or charge on property, either real or personal, as security for the payment of some debt or obligation, and for which the property may be sold in discharge of the lien." *In re Jaffe,* 111 B.R. 701, 703 (Bankr.N.D.Ill.1990) (citations omitted). While section 2–1402(d)(1) does state that "[t]he citation may prohibit the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the order," the Illinois Supreme Court has found that this language does not constitute an injunction, but rather is merely a notice of the penalty for transferring assets or disposing of assets that are found to belong to the judgment debtor. *Id.* at 704 citing *Bank of Aspen v. Fox Cartage, Inc.,* 126 Ill.2d 307, 127 Ill.Dec. 952, 956, 533 N.E.2d 1080, 1084 (1989) Since 2–1402 does not give the judgment creditor a charge on the property subject to the citation order, a lien is not created. Instead, the pre–1993 statute was basically a discovery tool. *Water Technologies Corp. v. Calco, Ltd.,* 132 F.R.D. 670, 676 n. 4 (N.D.Ill.1990) (adopting magistrate's report and recommendation)

3. The court in *In re Jaffe* listed four different sections of the code which provide for a lien. These can be found at 111 B.R. at 704.

4. Most notably, two Seventh Circuit panels, in dicta, assumed that a citation to discover assets creates a lien. *See Asher v. United States,* 570 F.2d 682 (7th Cir.1978) and *King v. Ionization*

Furthermore, as noted in *In re Jaffe,* 111 B.R. 701, 704 (Bankr.N.D.Ill.1990), other sections of the Illinois Code of Civil Procedure explicitly provide for the creation of liens.[3] Therefore, the absence of an explicit statement as to the creation of a lien upon the service of a citation is a glaring omission that leads to the conclusion that the legislature did not intent to provide for a lien.

The court does recognize that there is significant case law weighing in on the other side of the issue.[4] However, as Judge Aspen noted in *Water Technologies,* the case law upon which most of these decisions are based have been "debunked" by the *In re Jaffe* decision. *Water Technologies,* 132 F.R.D. at 671. According to *Jaffe,* the case law that supports the idea that a citation creates lien is directly attributable to a misreading of. *Levine v. Pascal,* 94 Ill.App.2d 43, 236 N.E.2d 425 (1968). In that case the court stated that a plaintiff becomes a lien creditor once a writ of execution is given to the sheriff and that this lien could be enforced through citation proceedings. *Id.* at 55, 236 N.E.2d at 430. Thus, the *Levine* court clearly stated that the writ, and not the citation itself, created the lien. Despite this holding, subsequent courts improperly took *Levine* to stand for the proposition that service of the citation created a lien. *See Bank of Broadway v. Goldblatt,* 103 Ill.App.2d 243, 243 N.E.2d 501 (1968); *Mid-West Nat'l Bank of Lake Forest v. Metcoff,* 23 Ill.App.3d 607, 319 N.E.2d 336 (1974); *but see General Tel. Co. of Ill. v. Robinson,* 545 F.Supp. 788, 793 (C.D.Ill.1982) (noting that *Levine* held that plaintiff acquired a lien upon delivery of the writ and not upon issuance of a citation). Therefore, this court agrees with *In re Jaffe* and finds that much the case law supporting the creation of a lien was based on an incorrect reading of the law.

Thus, having weighed the case law and carefully reviewing the statute and its

*Int'l, Inc.,* 825 F.2d 1180 (7th Cir.1987). However, since both cases started with the presumption that a citation does create a lien and did not directly reach the issue of whether the citation does, in fact, create a lien, the court finds that the Seventh Circuit has not passed judgment on the issue.

amendment, the court adopts the rationale of *In re Jaffe* and finds that the issuance of a citation does not create a lien. Unlike in other sections of the code, § 2–1402 did not provide for a lien; the court declines to exceed its authority and read one into the statute. This holding obviates the need for the court to reach the strong-arm and preference issues. The court finds that the bankruptcy court properly granted the trustee's motion for summary judgment.

## CONCLUSION

In conclusion, the court affirms the decision of bankruptcy court.

**IT IS SO ORDERED.**