SOUTHWESTERN BELL MOBILE SYSTEMS, INC., *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF REVENUE *et al.*, Defendant-Appellant.

First District (6th Division)    No. 1—99—2122

Opinion filed June 16, 2000.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (John M. Hughes and Leslie J. Rosen, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendants Illinois Department of Revenue (Department) and Glen Bower, Director of the Department, appeal an order of the circuit court of Cook County in administrative review reversing the Department's decision that plaintiffs Southwestern Bell Mobile Systems, Inc., Decatur Cellular Telephone Company, Inc., Champaign Celltelco, SBMS Cellular Telecommunications Bloomington, Inc., SBMS Cellular

Telecommunications Springfield, Inc., and Eastern Missouri Cellular Limited Partnership (collectively Taxpayers) were not entitled to a refund of invested capital tax payments for tax years 1991-94.

The record on appeal discloses the following facts. Southwestern Bell Mobile Systems, Inc., is a Delaware corporation providing cellular telephone service in the Chicago metropolitan area under the name Cellular One. The remaining Taxpayers are limited partnerships in which Southwestern Bell Mobile Systems, Inc., holds a controlling interest. The remaining taxpayers provide cellular telephone service in parts of Illinois outside the Chicago metropolitan area.

In 1979, the General Assembly imposed a tax on the invested capital of persons engaged in transmitting messages and acting as retailers of telecommunications. See 35 ILCS 610/2a.1 (West 1994). In 1986, the General Assembly amended section 13—203 of the Universal Telephone Service Protection Law of 1985, part of the larger Public Utilities Act, to provide in part:

> "The [Illinois Commerce] Commission [ICC] may, by rulemaking, exclude *** cellular radio service *** from active regulatory oversight to the extent it finds *** that such exclusion is consistent with the public interest and the purposes and policies of this Article." 220 ILCS 5/13—203 (West 1996).

On February 18, 1987, the ICC entered an order removing the cellular industry in Chicago from active regulatory oversight. See *In re Chicago SMSA Ltd. Partnership*, 81 Pub. Util. Rep. 4th 287 (1987). The ICC later extended this order to the entire cellular industry in Illinois. See 83 Ill. Adm. Code § 760.10 (1997) ("For purposes of the exclusion from active regulatory oversight for providers of cellular radio service *** cellular radio service *** is excluded from the applicable tariff provisions ***"). The Taxpayers generally commenced cellular operations in Illinois in 1987.

In 1991, the General Assembly amended the taxing statute to provide in relevant part that "[t]he invested capital tax imposed by this Section shall not be imposed upon persons who are not regulated by the Illinois Commerce Commission." 35 ILCS 610/2a.1 (West 1994). The Taxpayers paid the Department $6,914,647.32 in invested capital taxes for tax years 1991-94.

On December 28, 1994, the Taxpayers filed a claim for a refund for the total invested capital taxes they paid for tax years 1991-93. On October 30, 1995, the Taxpayers filed a claim for a refund for the total invested capital taxes they paid for tax year 1994. The Taxpayers argued that the invested capital tax did not apply to them because: (1) it was a replacement tax and the cellular telecommunications industry did not exist at the time of its enactment; (2) the Taxpayers were not

regulated by the Illinois Commerce Commission; (3) the tax applies only to entities who would have been subject to the Messages Tax Act imposed in 1945, which did not extend to interstate commerce; and (4) the tax violates the uniformity provision of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, § 2).

On January 24, 1996, the Department issued tentative determinations that the taxpayers were not entitled to a refund. The Taxpayers filed timely protests of these determinations. The protests were consolidated before an administrative law judge (ALJ) for consideration on a stipulation of facts and on the briefs.

On June 20, 1997, the Governor of the State of Illinois approved Public Act 90—154, including the Telecommunications Municipal Infrastructure Maintenance Fee Act (the Act), which repealed the invested capital tax. Public Act 90—154, eff. January 1, 1998. The Act's "legislative intent" section (35 ILCS 635/5 (West 1998)) provides in part as follows:

> "The General Assembly imposed a tax on invested capital of utilities to partially replace the personal property tax that was abolished by the Illinois Constitution of 1970. Since that tax was imposed, telecommunications retailers have evolved from utility status into an increasingly competitive industry serving the public. This [a]ct is intended to abolish the invested capital tax on telecommunications retailers ***. *** *Cellular [t]elecommunications retailers have already been excluded from application of the invested capital tax by earlier legislative action.*" (Emphasis added.)

On August 11, 1997, the ALJ recommended that the Taxpayers' refund claim be denied. On August 29, 1997, the Director accepted the recommended decision.

On November 17, 1997, the Taxpayers filed a complaint seeking administrative review of the Director's decision, which alleged that they were served by United States mail postmarked October 14, 1997. On May 17, 1999, following the submission of briefs by the parties, the trial court reversed the decision of the Director. The trial court concluded that the Taxpayers were not regulated by the ICC, based on section 2a.1 of the Messages Tax Act (35 ILCS 610/2a.1 (West 1994)) and section 5 of the Act (35 ILCS 635/5 (West 1998)). The Department filed a timely notice of appeal to this court.

## I.

On appeal, the Department argues that the trial court erred in reversing the Director's decision that the taxpayers were not entitled to a refund of invested capital tax payments for tax years 1991-94. The Department relies heavily on *Chicago SMSA Ltd. Partnership v. Department of Revenue*, 306 Ill. App. 3d 977, 715 N.E.2d 719 (1999), in

which this court, addressing the same legal issues involved in this case, ruled in favor of the Department. The Taxpayers argue that *Chicago SMSA* was wrongly decided. As the issues in this appeal involve questions of law, the standard of review is *de novo*. *Chicago SMSA*, 306 Ill. App. 3d at 980, 715 N.E.2d at 722.

## II

The primary issue in this appeal and in *Chicago SMSA* is whether the Taxpayers were entitled to a refund of invested capital taxes on the ground that they are "not regulated by the Illinois Commerce Commission." It is undisputed that, in 1987, the ICC removed the cellular telecommunications industry from "active regulatory oversight," pursuant to section 13—203 (220 ILCS 5/13—203 (West 1996)). See 83 Ill. Adm. Code § 760.10 (1997). In *Chicago SMSA*, this court agreed with the Department that the cellular telephone companies nevertheless remained regulated by the ICC, noting that: (1) the two statutory phrases were not identical; and (2) there were instances where the cellular telephone companies were or had been subject to "passive" or "residual" regulation by the ICC. *Chicago SMSA*, 306 Ill. App. 3d at 981-84, 715 N.E.2d at 723-24.

The taxpayers in *Chicago SMSA*, like the Taxpayers here, also argued that the statement of legislative intent in section 5 of the Act, that "[c]ellular [t]elecommunications retailers have already been excluded from application of the invested capital tax by earlier legislative action" (35 ILCS 635/5 (West 1998)), clarified the prior legislation and proved that their removal from active regulatory oversight rendered them "not regulated by the ICC" in tax years 1991-94. In *Chicago SMSA*, this court rejected the argument, stating that the statement in the 1998 statute did not purport to expressly clarify some existing ambiguity; it was "more of an historical statement, and, like many attempts to write history, it is incorrect." *Chicago SMSA*, 306 Ill. App. 3d at 985-86, 715 N.E.2d at 725.

We agree with the *Chicago SMSA* court that "[i]f the legislature in 1991 intended to say the tax did not apply to cellular providers over which the ICC conducted 'no active regulatory oversight,' it could have said so." *Chicago SMSA*, 306 Ill. App. 3d at 983, 715 N.E.2d at 724. Section 13—203 of the Universal Telephone Service Protection Law of 1985 provides that the ICC "*may, by rulemaking*, exclude \*\*\* cellular radio service \*\*\* from active regulatory oversight *to the extent it finds \*\*\* that such exclusion is consistent with the public interest.*" (Emphasis added.) 220 ILCS 5/13—203 (West 1994). This plain language makes clear that the ICC was and is not required to take any such action and that the degree to which such action occurs depends

on the ICC's findings regarding the public interest. In addition, the action it takes in this regard is to be "by rulemaking."

Both the *Chicago SMSA* court and the Taxpayers in this case agree that to "regulate" is to "govern or direct according to rule." See *Chicago SMSA*, 306 Ill. App. 3d at 983, 715 N.E.2d at 724. The ICC's rule removing cellular radio service from active regulatory oversight is itself a regulation prospectively governing cellular radio service.[1]

Moreover, section 13—203 defines "telecommunications service," then lists services that are excluded from that definition. See 220 ILCS 5/13—203(a), (b), (c) (West 1994). It is in the text *following* those exclusions that the legislature grants the ICC the authority to exclude cellular radio service from active regulatory oversight. The plain language of the section 13—203 does *not* grant the ICC the authority to exclude cellular radio service from the definition of "telecommunications service."

Had the legislature granted such authority to the ICC, the effect of the 1987 ICC rule would have been not only to remove the Taxpayers from active regulatory oversight, but also to declare that cellular radio service was not "telecommunications service," and that the Taxpayers were not "telecommunications carriers." See 220 ILCS 5/13—202 (West 1994). The Taxpayers then would have had a stronger argument that they are not regulated by the ICC. *Cf.* 220 ILCS 5/13—102(d) (West 1994) (finding that protection of the public interest requires continued regulation of telecommunications carriers and services for the foreseeable future). The fact that the legislature did not grant the ICC authority to exclude cellular radio service from the definition of "telecommunications service" further supports the conclusion that an exclusion from active regulatory oversight is not the same as an exclusion from ICC regulation.

We recognize that section 5 of the Act states that "[c]ellular [t]elecommunications retailers have already been excluded from application of the invested capital tax by earlier legislative action." 35 ILCS 635/5 (West 1998). However, the General Assembly's subsequent declaration of prior intent cannot alter the clear import of the prior

---

[1]At oral argument, the Taxpayers suggested that certain ICC regulations would have been preempted by federal legislation had the ICC not acted. However, the Taxpayers did not raise this argument before the Department, thus waiving it on appeal. *Chicago SMSA*, 306 Ill. App. 3d at 988, 715 N.E.2d at 727. We further note in passing that the *Chicago SMSA* court rejected a preemption argument. *Chicago SMSA*, 306 Ill. App. 3d at 986-87, 715 N.E.2d at 726. We express no opinion on the question of whether the ICC's regulation is immutable or irrevocable, as the parties did not brief the issue.

statutory language. *Roth v. Yackley*, 77 Ill. 2d 423, 428, 396 N.E.2d 520, 522 (1979). In *Roth*, the supreme court also stated:

"[I]t is logically difficult to perceive how the declaration and the amendments by the 80th General Assembly can be simply a clarification of the intent of the 77th General Assembly which originally enacted the statute seven years earlier since only a fraction of the individuals who comprised the General Assembly were the same at both times." *Roth*, 77 Ill. 2d at 428, 396 N.E.2d at 522.

Nevertheless, the Taxpayers and the trial court concluded that this case is controlled by the supreme court's subsequent statement that "although the passage of an amendment raises a presumption that the legislature intended to change the substantive law, the presumption will be rebutted if the circumstances show that the legislative intent was to clarify previously ambiguous language." *Commonwealth Edison Co. v. Department of Local Government Affairs*, 85 Ill. 2d 495, 505, 426 N.E.2d 817, 821 (1981).

The question is whether the prior statutory scheme was ambiguous. The *Chicago SMSA* court concluded that it was not. The discussion above shows further reasons for concluding that there was no ambiguity. Moreover, the Act was intended "to abolish the invested capital tax on telecommunications retailers." 35 ILCS 635/5 (West 1998). The stated reason for doing so was that "telecommunications retailers have evolved from utility status into an increasingly competitive industry serving the public." 35 ILCS 635/5 (West 1998). Whether cellular retailers had already been excluded from the tax would seem to be relevant only to the extent such action contributed to increased competition. Yet the statement of legislative intent does not state that the invested capital tax was being repealed in its entirety to "level the playing field" between cellular and noncellular telecommunications retailers. In addition, the statement cited by the Taxpayers is couched as a statement of fact and makes no reference to the prior statutory scheme being ambiguous. In short, the Act was intended to repeal the invested capital tax, not to clarify it.

Furthermore, the Act was approved on June 20, 1997, with an effective date of January 1, 1998. The Taxpayers rely on supreme court case law stating:

" 'If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change [of the original act by the amendment].' " *Gill v. Miller*, 94 Ill. 2d 52, 58, 445 N.E.2d 330, 333 (1983), quoting 1A A. Sutherland, Statutory Construction § 22.31 (4th ed. 1972).

Conversely, a statute that remains unaltered through successive sessions of the General Assembly over a period of years indicates legislative acquiescence in a contemporary and continuous administrative interpretation. *People ex rel. Spiegel v. Lyons*, 1 Ill. 2d 409, 414, 115 N.E.2d 895, 898 (1953).

In this case, the Taxpayers point to a 1990 private letter ruling that the invested capital tax was limited to original parameters of the messages tax and could not be expanded to cover interstate transactions, even if similar transactions were subject to the Telecommunications Excise Tax Act (35 ILCS 630/1 *et seq.* (West 1996)), unless the legislature enacted legislation that would impose such a tax. However, a reading of section 2a.1 shows that the 1991 amendment that the taxpayers claim excluded them from taxation actually amended the law to specify that the tax would apply to "a retailer of telecommunications as defined in Section 2 of the Telecommunications Excise Tax Act" (35 ILCS 610/2a.1 (West 1994)), not just to "persons engaged in the business of transmitting messages subject to the tax imposed by this [Messages Tax] Act."

Following the 1991 amendment, the Department concluded that cellular telecommunications service providers are subject to the invested capital tax. See *Chicago SMSA*, 306 Ill. App. 3d at 979, 715 N.E.2d at 721 (taxpayer received notice of invested capital tax liability in 1992). The statement of legislative intent in the Act became effective years after the 1991 amendment and years after the November 1995 determination of the Department in *Chicago SMSA*. 306 Ill. App. 3d at 980, 715 N.E.2d at 722. Thus, the legislature acquiesced in a contemporary and continuous administrative interpretation of the statutes at issue.

The Taxpayers criticize the *Chicago SMSA* court's treatment of section 5 of the Act, arguing that as passed by the legislature it carries the force of law. However, the rule is that expression by the legislature of an erroneous opinion concerning the law does not alter it. *Arnold v. City of Chicago*, 387 Ill. 532, 541-42, 56 N.E.2d 795, 800 (1944). Thus, the Taxpayers' criticism is not persuasive.

In sum, the Director did not err in determining that the Taxpayers remained regulated by the ICC during tax years 1991-94.

### III

The remaining issues the Taxpayers raise in the appeal are also addressed in the conclusions and *dicta* of *Chicago SMSA*. For example, the Taxpayers contend the General Assembly intended to impose the invested capital tax only on monopolistic public utilities. The Taxpayers also contend that the invested capital tax was a replacement tax

which could not apply to them because the cellular telecommunications industry did not exist in 1979. The *Chicago SMSA* court noted that the plain language of the relevant statute placed no such limits on the tax and declined to imply them. *Chicago SMSA*, 306 Ill. App. 3d at 981, 715 N.E.2d at 722.

The Taxpayers here do not explain how the *Chicago SMSA* court erred in resolving these arguments in favor of the Department. Indeed, the taxpayers cite no authority that supports their position. The Taxpayers' sole citation to authority, *Continental Illinois National Bank & Trust Co. v. Zagel*, 78 Ill. 2d 387, 410, 401 N.E.2d 491, 502 (1979), discusses the purpose of the invested capital tax, but does not refer to monopoly status as a prerequisite for tax liability.

The Taxpayers also note that *Zagel* suggested that it would be improper if the invested capital tax was a revenue-raising measure as opposed to a revenue-replacing measure. See *Zagel*, 78 Ill. 2d at 401, 401 N.E.2d at 498. However, the *Zagel* court held that the invested capital tax was in fact a replacement tax. *Zagel*, 78 Ill. 2d at 401-02, 401 N.E.2d at 498. The mere fact that new taxpayers became subject to the tax does not alter the supreme court's conclusion; the validity of the tax is based on the design and nature of the tax, not the demographics of the taxpayers.

The Taxpayers maintain that they are exempt from the invested capital tax under the commerce clause of the United States Constitution. Although the taxpayers in *Chicago SMSA* waived this argument, the *Chicago SMSA* court rejected it in *dicta*, noting that (as also noted above in discussing the Department's consistent interpretation) the 1991 amendment to section 2a.1 expanded the scope of entities taxed, removing any Commerce Clause problem. See *Chicago SMSA*, 306 Ill. App. 3d at 988, 715 N.E.2d at 727. As the relevant amendment occurred in 1991, the Taxpayers simply cannot rely on a private letter ruling issued in 1990.

Nor is there a uniformity problem under the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, § 2). The statutes are not overinclusive because the expansion in scope of the 1991 amendment to section 2a.1 refutes the claim that the tax was not meant to apply to the Taxpayers, despite the fact that the taxpayers might own less personal property than noncellular retailers. The statutes are not underinclusive for failure to apply the tax to resellers of cellular service, as providers such as the Taxpayers must invest in transmitting equipment, thus justifying different treatment. *Chicago SMSA*, 306 Ill. App. 3d at 987, 715 N.E.2d at 726-27. This factor also distinguishes this case from the two cases cited by the Taxpayers. See *Federated Distributors, Inc. v. Johnson*, 125 Ill. 2d 1, 530 N.E.2d 501 (1988)

(holding there was no real, substantial difference between low-alcohol beverages and wine coolers that would justify different tax rate); *National Pride of Chicago, Inc. v. City of Chicago,* 206 Ill. App. 3d 1090, 562 N.E.2d 563 (1990) (tax imposed on self-service car washes, but not on automatic car washes, violated uniformity clause).

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

BUCKLEY and O'BRIEN, JJ., concur.